UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA LOPEZ,<br><br>   *Plaintiff,*<br><br>v.<br><br>AMAZON.COM, INC. and PRIME NOW LLC,<br><br>   *Defendants.* | Civil Action No:<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Maria Lopez, by and through her attorneys Gender Equality Law Center and Vladeck, Raskin & Clark P.C. alleges as follows:

**Preliminary Statement**

1. Maria Lopez ("Lopez") worked for defendants Amazon.com, Inc ("Amazon.com") and Prime Now LLC ("Prime Now") (collectively referred to as "Amazon"), from January through October 2020, including performing grueling and dangerous essential work selecting and packing groceries during the height of the first wave of the 2020 COVID pandemic at Amazon's Whole Foods Store located at Columbus Circle ("the Columbus Circle Store").

2. While employed at the Columbus Circle Store, a supervisor began to sexually harass Plaintiff, including, touching her without her consent, making sexual comments and using Amazon employee rewards to demand unwanted physical touching. When Lopez complained, her shifts were cut and then she was fired.

3. Lopez wants her job back. She has reapplied dozens of times to Amazon. Despite many listed job openings for day shifts in New York City, Amazon has never offered Ms. Lopez a comparable position in any location anywhere near her home.

4. Amazon's treatment of Lopez constitutes unlawful sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII") and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.* ("NYCHRL").

## Jurisdiction, Venue, and Procedural History

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question).

6. The Court also has federal court jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity) as the parties reside in at least two different states. The amount in controversy exceeds $75,000.

7. The Court has jurisdiction over Plaintiff's pendant state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction). Plaintiff's City law claims are parts of the same case or controversy as plaintiff's federal claim because they arise out of the same discriminatory and retaliatory employment circumstances.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391. A substantial part of the acts and/or omissions giving rise to the claims alleged in this Complaint occurred within this district.

9. Defendants do business in this district.

10. Plaintiff filed a complaint of discrimination in the New York City Commission on Human Rights (NYCCHR) on July 23, 2021, which was cross-filed in the Equal Employment Opportunity Commission (EEOC).

11. The NYCCHR dismissed the complaint for administrative convenience to allow filing of this lawsuit on July 28, 2022.

12. The EEOC issued a right to sue on September 21, 2022.

13. Within 10 days of the commencement of this action, a copy of the Complaint will be served on the NYCCHR and the Office of Corporation Counsel pursuant to § 8-502I of the N.Y.C. Admin. Code.

**Parties**

14. Plaintiff Lopez lives in the Bronx in New York City.

15. From January through October 2020, Lopez worked for Amazon at various locations in New York City. At times relevant to this complaint, Lopez worked in some capacity helping to shop for and fulfill customer orders and deliveries. Her primary assigned location was at the Whole Foods Store located at 10 Columbus Circle, New York, NY 10019. Occasionally, Lopez was assigned to work at various warehouse locations near the Columbus Circle store assisting with unpacking Whole Foods items.

16. Defendant Amazon.com is a multinational technology company focusing on e-commerce. Amazon.com is headquartered at 410 Terry Avenue, North, Seattle, Washington 98109.

17. Defendant Amazon.com is registered with the New York State Department of State as a foreign corporation with a services address of c/o Corporation Service Company, 80 State Street, Albany, New York 12207.

18. Defendant Prime Now is an affiliate of Amazon.com. On information and belief, Prime Now is headquartered at 410 Terry Avenue, North, Seattle, Washington 98109.

19. The address listed for Prime Now on Lopez's W-2 tax form is P.O. Box 80726, Seattle, WA 98108.

20. Prime Now is registered with the New York State Department of State as a foreign corporation with a service address of c/o Corporation Service Company, 80 State Street, Albany, NY 12207.

21. Whole Foods is a subsidiary of Amazon.

**Factual Allegations**

22. Complainant Lopez is a hard-working wife and mother of three young children. She is a U.S. Citizen originally from Mexico. Lopez's predominant language is Spanish, and she has limited English proficiency.

23. In January 2020, Plaintiff began working for Defendants. She was assigned to work at the Columbus Circle Store.

24. When the Coronavirus pandemic began, in or about March 2020, Defendants asked Lopez to work as one of its essential workers as a "Shopper."

25. Typically, Lopez would go to the Columbus Circle Store and gather items, or shop from orders created by customers and submitted .

26. During this time, Lopez worked long hours; she was assigned and worked overtime most weeks.

27. The pandemic created a very stressful time to be employed as an essential worker in New York City. During Plaintiff's employment with Defendants, several of Lopez's coworkers died of COVID. Still, she continued working because she was desperate to earn money for herself and her family.

28. In about late April 2020, Lopez contracted COVID herself and was granted excused time off to recover. She returned to work as soon as she was able on May 4, 2020.

29. One of the people Lopez worked with was a man named "CJ." On information and belief, C.J.'s full name is Craig Jimmy Lee.

30. In about July 2020, CJ was promoted to a supervisor position overseeing the work performed by other "Shoppers" at the Store, including Lopez.

31. After CJ's promotion, in about July 2020, he began making unwanted sexual comments and overtures to Lopez.

32. For example, on one occasion in about July 2020, CJ came up to Lopez on the sidewalk outside the store, put his face very close to her, sniffed, and said: "You look nice today and you smell good today." He asked the name of her perfume.

33. Lopez was very uncomfortable with CJ's proximity, including the fact that his face was close to her body. She was also upset that CJ made an unwanted reference to how good she smelled. Lopez moved away from him and said: "don't smell me," "what you are doing is wrong" I don't like what you are doing," and "what you are doing is incorrect," or words to this effect. Lopez spoke in both Spanish and English to CJ. As far as Lopez could tell, CJ understood what she was saying because he looked annoyed and/or angry.

34. Notwithstanding Lopez's clear rejection of CJ, he continued the unwanted sexual comments. After the first incident where CJ smelled Lopez, and made statements about how good she smelled, he also began regularly coming up to her at work and say things like: "you look sexy," "you look cute."

35. Lopez attempted to discourage CJ's unwanted sexual remarks, for example saying "What?" and moving away with a clear facial expression indicating she was uninterested in CJ.

36. CJ also began to use Amazon's work reward incentives to sexually harass Lopez.

37. For example, CJ gave Lopez a water bottle that was provided to workers as a reward for being a good worker. He then demanded a hug in return saying: "Where's my hug?"

38. Lopez did not want to give CJ a hug, much less touch him in any way, as she was extremely uncomfortable with his request. However, Lopez felt she had no choice but to give CJ

a hug regardless of whether or not she received the water bottle. Lopez tried to make the hug superficial, but CJ pushed his body close to her.

39. CJ repeated this conduct with a second Amazon incentive, a backpack provided to good workers. He again demanded a hug after he gave the backpack to Lopez. CJ then moved toward Lopez and grabbed her. Lopez kept her hand on her cart to pull away.

40. Following these incidents, Lopez no longer wanted any of the good work rewards because she would have to give in to being hugged by CJ.

41. Every day, Lopez felt more uncomfortable because of CJ's comments and behavior and feared that he would harass her on any given shift.

42. Lopez also observed CJ flirt and touch other subordinate female workers.

43. Lopez began to respond to CJ more assertively, asking him to "stop acting like that." She repeatedly told CJ "I'm not that type of person," meaning that she was not someone who enjoyed flirtation or sexual interactions with someone outside of her partner. Plaintiff also told CJ she was married.

44. Plaintiff hoped that being clear about her lack of interest in CJ would deter him from further harassing her and making her workplace intolerable. But nothing worked. CJ continued his sexualized comments and inappropriate conduct.

45. Lopez tried to figure out what to do to make the harassment stop. She asked a female supervisor, whose first name was something like "Alexis," what to do about CJ.

46. On information and belief, Alexis is Area Manager Alexis Ballard.

47. Lopez described CJ's comments and behavior towards her. Alexis said, "I will talk to him."

48. Shortly thereafter, Alexis convened a brief meeting with CJ and Lopez in the store. At that meeting Lopez told Alexis she was afraid of and intimidated by CJ's conduct and words and said she wanted to go to the police to report his unwanted behavior toward her.

49. Alexis asked Lopez not to file a police report. She promised Lopez that CJ's conduct would stop. Alexis then instructed Lopez and CJ to shake hands and go back to work.

50. After this meeting, CJ began to retaliate against Lopez, presumably for coming forward and complaining about his conduct. He yelled at her, criticized her work, and acted aggressively toward her. Before complaining to Alexis, CJ had not criticized Lopez's work performance. Other supervisors also began criticizing and yelling at Lopez without cause. Lopez had witnessed these individuals work with and communicate with both CJ and Alexis.

51. Lopez learned about a 1-888 number that Amazon maintained as a complaint hotline. She called that number and stated that she was being discriminated against and harassed.

52. Over the next several weeks, Lopez called the 1-888 number several more times to report CJ's conduct toward her.

53. Eventually, Lopez received a phone call from a woman who identified herself as Angela and said she was responding to Lopez's hotline complaints. Angela said it was policy to give only a first name.

54. Angela said she would investigate Lopez's complaint and get back to her but spent only a few minutes speaking to Lopez about her complaints of sexual harassment.

55. Angela spoke to Lopez in English only. Lopez responded using her limited English. At no time did Angela offer Lopez a translator in order to obtain a more comprehensive narrative of what had happened to Lopez in Defendants' Columbus Circle Store.

56. Angela called Lopez back within a short time frame. Angela told Lopez that she could not find any incidents of sexual harassment or discrimination. Lopez was surprised that the investigation had been done so quickly. No details about the investigation were shared with Lopez.

57. In or about August 2020, shortly after Lopez complained to Amazon about discrimination and harassment, the number of dayshifts she was offered by Defendants were reduced. Before calling the hotline, Lopez had been assigned enough day shifts to work full time. After she complained to the hotline, many of the shifts offered by Amazon were for evening time slots which Lopez could not accept because she had small children at home who needed her care.

58. The reduction in day shifts offered made it extremely difficult for Lopez to accumulate enough hours to work full time in order to support her family.

59. In September 2020, Lopez's son was sick, and she could not make her shift. She emailed and tried to call Amazon but could not reach anyone. In an effort to be a responsible, and to avoid a "no show" to work, she went in person to a warehouse location in Manhattan and spoke with a supervisor there. This supervisor told her she could take the day off to care for her son. This is the only shift Lopez can recall ever missing while employed with Amazon except for excused absences while she had COVID in or about April 2020.

60. Notwithstanding the above absence, on a previous occasion only months earlier, Lopez received an email warning her about having missed shifts. In fact, Lopez had not missed any of the shifts referenced in that e-mail, so she asked Alexis the Manager in the Columbus Circle store for help to resolve the matter. Alexis informed her that it was a system error and corrected it.

61. Amazon fired Lopez on about October 3, 2020.

62. Lopez did not understand why she was being fired. She went in to ask a manager for an explanation as to why she was terminated. That manager told her she was fired for not complying with shift schedules. Lopez did not receive a non-compliance warning in advance of her termination and was unaware of having missed any shifts assignments that she had accepted, with the exception of the one related to her son's illness.

63. Lopez later emailed Amazon's Human Resources Center, who confirmed she had been "terminated for attendance," and was "not eligible for rehire for one year from the date of termination, on October 4, 2020."

64. Soon after being fired, Lopez emailed Amazon's Human Resources department stating that she believed she had been fired because she complained about sexual harassment.

65. In October 2020, Amazon's Human Resources Center responded with a form email. The email said that Amazon had "investigated" and "did not find a violation of Amazon policy or standards of conduct." There was no reference as to the nature and extent of any investigation.

66. Lopez suffered and continues to suffer significant damages, including emotional distress, because of CJ and Amazon's actions. She feels like she should never have complained about his conduct because she was punished for making these complaints.

67. Lopez has been unable to find equivalent work despite diligent searching. She remains interested in returning to a job with Amazon.

68. Lopez has mitigated her lost pay to the best of her ability.

**FIRST CAUSE OF ACTION**
**(Sex Discrimination in Violation of Title VII)**

69. Plaintiff realleges and incorporates by reference the foregoing allegations as if

fully set forth herein.

70. Plaintiff was discriminated against on the basis of sex, including through the creation of a hostile work environment and adverse employment actions, as set forth above.

71. Defendants' actions violated Title VII, causing Plaintiff to suffer damages, including but not limited to lost pay and other economic damages and emotional distress.

72. Defendants' actions were willful and demonstrate a reckless indifference to the right of Plaintiff to work free of sexual harassment on the job.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII)

73. Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

74. Plaintiff engaged in protected activity and was retaliated against as set forth above.

75. Defendants' actions violated Title VII, causing plaintiff to suffer damages, including but not limited to lost pay and other economic damages and emotional distress.

76. Defendants' actions were willful and/or demonstrate reckless indifference to Plaintiff's legal right to be free of retaliation for coming forward to complain about sexual harassment on the job.

## THIRD CAUSE OF ACTION
### (Gender Discrimination in Violation of the New York City Human Rights Law)

77. Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

78. Plaintiff was discriminated against on the basis of her gender including through the creation of a hostile work environment and adverse employment actions as set forth above.

79. Defendants actions violated the NYCHRL causing Plaintiff to suffer damages, including but not limited to lost pay and other economic damages and emotional distress.

80. Defendants actions were willful or demonstrated reckless indifference to the right of Plaintiff to be free of sexual harassment in the workplace.

### FOURTH CAUSE OF ACTION
**(Retaliation in Violation of New York City Human Rights Law)**

81. Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

82. Plaintiff engaged in protected activity and was retaliated against as set forth above.

83. Defendants' actions violated the NYCHRL, causing plaintiff to suffer damages, including but not limited to lost pay and other economic damages and emotional distress.

84. Defendants' actions in retaliating against Plaintiff for coming forward and making protected complaints, about being sexually harassed on the job, were willful and/or demonstrate a reckless indifference to the rights of women such as Lopez to work in a job without being sexually harassed.

### Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury as to all issues so triable.

### Prayer for Relief

WHEREFORE, plaintiff requests that this Court enter an Order:

a. assuming jurisdiction over this action;

b. declaring defendants violated Title VII and the New York City Human Rights Law;

    c.    ordering injunctive relief to remedy the unlawful discrimination and retaliation, including but not limited to reinstatement to a comparable position;

    d.    awarding damages including:

- lost pay and other lost compensation;
- out-of-pocket costs;
- compensatory damages including emotional distress;
- punitive damages;

    e.    awarding prejudgment and post judgment interest as allowed by law;

    f.    awarding costs and reasonable attorneys' fees; and

    g.    granting such further relief as the Court deems just and proper.

DATED:    New York, NY
              October 13, 2022

GENDER EQUALITY LAW CENTER

*/s/ Allegra L. Fishel*
_____
Allegra L. Fishel
157 13th Street
Brooklyn, New York 11215
347-844-9003; Ext. 1
afishel@genderequalitylaw.org

VLADECK, RASKIN & CLARK, P.C.

_____
Maia Goodell
565 Fifth Avenue, 9th Floor
New York, New York 10017
(212) 403-7300
(212) 221-3172 (fax)
mgoodell@vladeck.com